H H. LEACH, Respondent, v. A. L. NELSON and LEILA NELSON, Appellants.

(189 N. W. 251.)

Pleadings — presenting amendments upon the merits the real issue, should be liberally allowed.

1.  Amendments to pleadings that serve to present, upon the merits, the real determinative issues, should be liberally allowed in the interests of justice and the expedition of termination of litigation.

New trial — where amendments to answer were allowed and subsequently the court erroneously ruled that the amendment was no defense, a new trial will be ordered.

2.  Where, during the course of a trial, amendments to an answer have been tendered and, in part, have been allowed by the trial court for the purposes of receiving evidence, and thereafter the trial court erroneously determines that the proposed amendment allowed constitutes no defense, a new trial will be ordered.

Frauds, statute of — mortgages — where purchaser assumes debt and mortgagee agrees to look to the mortgage lien, held that mortgagors are sureties for the debt; mortgagee is bound to preserve the mortgage lien and his default is a defense to mortgagors' liability; mortgagee's duty through agreement to preserve the mortgage lien is not within the statute of frauds.

3.  Where a mortgagee, knowing that the mortgaged premises are

about to be transferred to a purchaser who has assumed and agreed to pay the mortgage debt, agrees that he will look wholly to the mortgage lien for payment, it is *held*:

(a) That the mortgagors become sureties for the payment of the mortgage debt.

(b) That it is the duty of the mortgagee to preserve and protect the mortgage lien.

(c) That the failure of the mortgage to preserve and protect the mortgage lien was a defense to the liability of the mortgagors upon their note which evidences the mortgage debt.

(d) That § 7007 C. L. 1913 (§ 121 Neg. Inst. Law) requiring a renunciation to be in writing to exempt personal liability does not apply.

(e) That the consequent duty imposed upon the mortgagee, through his agreement, arises upon equitable considerations and is not within the statute of frauds.

Opinion filed May 23, 1922.

Action in District court, Ramsey county, *Burr,* J.

From a judgment ordered by the trial court the defendants have appealed.

Reversed and a new trial granted.

*Flynn, Traynor & Traynor,* for appellants.

The general rule is to allow amendments; to refuse is the exception. Nashua Savings Bank v. Lovejoy, 1 N. D. 211; Anderson v. Bank, 5 N. D. 80; Bigelow v. Draper, 6 N. D. 152; Finlayson v. Peterson, 11 N. D. 45; Sheterlund v. Deal, 12 N. D. 123; Kerr v. Grand Forks, 15 N. D. 294; Barker v. More, 18 N. D. 82.

It is the rule to interpret liberally the right to amend and that a variance between the pleading and the proof shall not be deemed material unless it has actually misled the adverse party. Maloney v. Geiser Mfg. Co. 17 N. D. 195; Robertson v. Mosea, 15 N. D. 351; Halloran v. Holmes, 13 N. D. 411.

"It is a defense to an action on a note by the payee against the maker that it was given under an agreement that no suit should be brought thereon against the maker." 8 C. J. 741; Richardson v. Thomas, 38 Ark. 387; Monroe v. Martin (Ga.) 73 S. E. 341.

"It is essential to an equitable estoppel that the person asserting the

estoppel shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the person sought to be estopped."   21 C. J. 1080 and 1113, also 21 C. J. 1133.

"An obligation is extinguished by a release therefrom given to the creditor, upon a new consideration, or in writing, with or without new consideration."   Section 5833, Compiled Laws of N. D. 1913; National Bank v. Guthrie, (S. D.) 78 N. W. 995.

If it appears that the facts are such that amendment can be made and that thereby on a new trial a different result would be likely, in other words, if it appears that justice has not been done, at least a new trial should be granted.   Reick v. Daigle, 17 N. D. 365; Welch v. N. P. Ry. Co. 14 N. D. 19; Mechan v. G. N. Ry. Co. 13 N. D. 432; Kerr v. Anderson, 16 N D. 36; Aetna v. Schroeder, 13 N. D. 10.

*A. E. Wheeler,* and *Middaugh, Cuthbert & Smythe,* for respondent.

The testimony under consideration in this case does not come within any of the recognized rules for the admission of parol testimony.   Its purpose and effect was to establish a contract different in terms from that of the written contract.   This testimony should have been excluded, and its admission was prejudicial error.   First Nat. Bank v. Prior, 10 N. D. 146, 86 N. W. 362; Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576; Rieck v. Daigle, 17 N. D. 365, 117 N. W. 346, 17 Cyc. 589, 644 2 Enc. Ev. 453; Dan. Neg. Inst. 80; 4 Am. & Eng. Enc. Law 2d ed. 146; See also 5889, Comp. Laws 1913.

It is elementary that, when separate writings are executed between the same parties at the same time, in the course and as parts of the same transaction and intended to accomplish the same general object they are construed as one and the same instrument, etc."   8 C. J. under the topic of Bills and Notes, p. 196.

The same rule is true with reference to subsequent agreements.   Foster v. Furlong, 8 N. D. 282; Heaton v. Myers, 4 Colo. 59; Swan v. Craig, (Neb.); Marshall Field Co v. Oren Ruffcorn, (Ia.) 90 N. W. 618; Bank v. Kelley, 30 N. D. 84.

### Statement.

BRONSON, J.   This is an action upon a promissory note.   The plaintiff is a resident of Minneapolis; the defendants reside in the state of Washington.   Jurisdiction was secured by attaching certain real estate

owned by the defendant A. L. Nelson.   The complaint alleges the making of a promissory note for $1,000, secured by a mortgage upon realty in Minneapolis; that at the time of making the note there was a prior mortgage upon such realty; that such mortgage has been foreclosed and absolute title has ripened in the holder thereof, through failure of the defendants to redeem, by reason whereof the plaintiff has no security for the payment of the note.   The answer admits the making and the non-payment of the note.   It alleges that the mortgaged real estate was deeded to the defendant A. L. Nelson; that he gave a mortgage to the plaintiff; that thereafter the defendants obtained the plaintiff's permission to sell the mortgaged property, and his release and discharge of any further liability upon the note; that upon obtaining such release and discharge they transferred such property; that, if plaintiff has suffered any loss through the foreclosure of the mortgage, it has occured through his carelessness and neglect in failing to make redemption.

At the commencement of the trial, the defendants moved to amend the answer by alleging that at the time of making the note it was agreed that the defendants should not be held personally liable thereon, and that the plaintiff would rely solely upon the real estate security.   Upon objection of the plaintiff the court overruled the motion.   Later, at the trial, the defendants again moved to amend, as above stated, and, further, that the note was delivered conditionally upon the agreement that plaintiff would not hold the defendants personally liable, that he would rely solely upon the real estate security, and that defendants would not have delivered such note excepting upon such representations and agreements. Again, the trial court, upon objection made, overruled the motion.   The court stated that the defendants could show a conditional delivery but they could not vary the terms of a written instrument; that if the defense was a good defense the court would allow it.   The court suggested that the defendants should make an offer of proof.   The defendants requested that the court permit them to introduce their testimony over objection so that they might not be compelled to again retry the case.   The trial court, expressing doubt upon the questions, stated that he would allow the introduction of the testimony.   Later, when testimony was offered concerning a conditional delivery, the court stated that he had allowed the first amendment offered; that the amendment concerning the conditional delivery was still another offer which the court would reject. Defendants then offered to prove that at the time of delivering the note the plaintiff knew and agreed that the defendants were signing such

note upon the understanding that they would not be held personally liable, that the plaintiff would look solely to the real estate security for the payment thereof, and that the note should not be delivered unless he so consented. This offer was rejected. At the conclusion of the evidence the defendants again renewed their motion to amend the answer as requested, upon the ground that the evidence introduced justified such proposed amendments, and that same would not operate to the prejudicial disadvantage of the plaintiff. The court overruled the motion so far as conditional delivery was concerned and reserved ruling upon the other. Accordingly upon such issues and proposed issues there appears in the record evidence to the following effect: The promissory note was made payable at Minneapolis; it was delivered to the plaintiff at Minneapolis.

Mrs. Nelson gave testimony as follows: The defendants (makers of the note) are husband and wife. She is the mother of defendant A. L. Nelson. She has had all the transactions with the plaintiff concerning this note and the property. The plaintiff never saw the defendants. There was a farm in Polk county that stood in the name of the son. She made the arrangements to trade this land for the Minneapoils property, which was transferred by the plaintiff and the title placed in her son's name. The note in suit was given as a part of the purchase price. At the time of the original transaction, it was agreed between her and plaintiff that her son and daughter-in-law should not be held personally liable upon the note; that the plaintiff would rely solely upon the real estate security. In making this transaction she expressly told the plaintiff that she did not want her son and his wife to be held personally liable on the note, and the plaintiff made her understand that he would depend upon the lien. Later she made a deal with Rev. Scharf to trade her equity in the Minneapolis property for some land in St. Louis county. The Reverend wanted the money owing Leach to be paid. She went to the plaintiff and explained about her deal with the Reverend. She told him that she did not want her son and his wife to be held liable for any part of this debt. He stated that they would not be held liable; that he was perfectly satisfied with the mortgage; that the property was worth $8,000 or $9,000, and he was perfectly satisfied to take the lien upon the property. She then gave the Reverend a note for $400 and one for $600. She has paid the $400 note, but not the other. She told him that the Reverend was taking over the property subject to the mortgages. She gave these notes to the Reverend instead of paying off this $1,000 mortgage, and the Reverend agreed to pay such $1,000 mortgage. That,

furthermore, she owed one Rogers $2,000. He wanted a second mortgage on this Minneapolis property. He and Mrs. Nelson saw plaintiff. In their presence, plaintiff again stated that he would not hold her son and daughter-in-law personally liable. She further testified that she. was not aware of the foreclosure upon the property until she was advised by Rogers after sheriff's deed was issued. Mr. Rogers testified: That in his presence the plaintiff stated. to, and promised, Mrs. Nelson that he would not hold her son or his wife personally liable upon the note. That he took a mortgage upon the Minneapolis property for $2,000. That this was subject to a mortgage for $2,500 and the plaintiff's mortgage. The mortgage for $2,500 was foreclosed. He had redeemed from the foreclosure within the period of time allowed after the plaintiff's period of redemption expired. That he was ready to pay plaintiff's mortgage if the plaintiff had redeemed from the foreclosure. The plaintiff testified that the note signed by the defendants was delivered to him by Mrs. Nelson. He denied all conversations and agreements to the effect that he would not hold the defendants personally liable or that he would look solely to the real estate security. He filed a notice of intention to redeem from the foreclosure. He expected to redeem. He had a client in Wisconsin whom he expected to furnish the money, but this client arrived a day too late.

The jury returned a special verdict as follows:

I.   "Did the parties to this action make and enter into an oral agreement to the effect that the plaintiff would release and discharge the defendants from any liability under the note in issue and look to the real estate mortgaged for payment of the note?"   Answer: "Yes."

II.   "If such agreement was made, was it made at the time the note was executed or was it made some time thereafter?"   Answer: "At some time after the execution of the note."

III.   "Was the failure of the plaintiff to redeem from the foreclosure of the first mortgage due to his own carelessness and neglect?"   Answer: "Yes."

Later, upon motion of the plaintiff, trial court ordered judgment for the plaintiff for the full amount of the note, with interest. Accordingly, judgment was entered. The defendants have. appealed therefrom.

In a memorandum opinion, the trial court based its order largely upon the ground that the defendants made an oral agreement after the execution of the note to release their personal liability thereon, and that,

under the provisions of § 7007, C L. 1913, providing for renunciation, such agreement must be in writing.

The defendants contend that the trial court erred in not permitting the amendments offered, and in determining, pursuant to the evidence and the findings of the jury, that defendant's liability upon the note was not discharged.

## Decision

During the trial, for purposes of receiving evidence, the trial court, in effect, allowed the amendment to the complaint concerning the agreement not to hold personally liable the defendants, and rejected the proposed amendment concerning a conditional delivery. This court has heretofore held· that the power to amend pleadings is inherent in the courts where there is no jurisdictional defect; that the statute (§ 7482, C. L. 1913) is merely declarative of this view (Morgridge v. Stoeffer, 14 N. D. 430, 434, 104 N. W. 1112; Rae v. Railway Co., 14 N. D. 507, 510, 105 N. W. 721); that the authority vested in courts to allow amendments to pleadings is conferred to promote the ends of justice, and should be liberally exercised by the courts to that end; that the controlling principle in determining an application to amend is, or should be, whether the proposed amendment, if allowed, would further the ends of justice, and, further, that an amendment should be allowed if it be in the interests of justice and if it does not change substantially the claim or defense. Northwestern Mut. Savings & L. Ass'n v. White, 31 N. D. 348, 359, 153 N. W. 972; Patterson Land Co. v. Lynn, 27 N. D. 391, 416, 147 N. W. 256. It is evident upon the record in this case that the interests of justice require the submission of the issue tendered concerning plaintiff's agreement if such constitutes a defense. Further, it is apparent that the trial court would have so permitted if it had considered such issue sufficient to constitute a defense.

The plaintiff, however, was entitled to proper notification of the issues with which he would be confronted, and, if necessary, to an opportunity of preparing to meet such issues. The practice of tendering new issues from time to time throughout the course of the trial, of course, may not be commended. Nevertheless, amendments should be favorably considered where they serve to present the real determinative issues without prejudice to the rights of the parties and to aid in the administration of justice and the expedition of litigation.

The note involved was made in, and was payable in, Minnesota. The Uniform Negotiable Instruments Law was adopted in Minnesota in 1913. (chap. 272, Laws 1913 Gen. St. 1913, §§ 5813—6009); in North Dakota in 1899 (chap. 113, Laws 1899) § 7007. C. L. 1913 (§ 122, N. I. L.), provides that a holder may expressly renounce his rights against any party to the instrument before, at, or after its maturity, but a renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon. The same statutory provision in Minnesota is § 5934, Gen. St. 1913.

The Negotiable Instruments Law provides that in the hands of any holder, excepting a holder in due course, the note is subject to the same defenses as if nonnegotiable. Section 6943, C. L. 1913.

Upon the record, facts might be found by a jury which would warrant the existence of legal relations between the parties other than that evidence by the contract contained in the note alone.

Concerning the mortgaged real estate, the parties occupied the relation of mortgagors and mortgagee. When the defendants, as mortgagors, sold and transferred the mortgaged property, and the purchaser assumed and agreed to pay the mortgage debt to the plaintiff, the purchaser, then, as to such debt, became the principal, and the mortgagors, the sureties. 27 Cyc. 1356; Jones on Mortgages, § 741. The mortgagors then possessed a right or claim in the mortgaged property to the extent of the plaintiff's mortgage. If they had been compelled to pay the mortgage debt, they would have been subrogated to the mortgagee's rights. 27 Cyc. 1359. "The grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and the grantor, towards the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt." Union Mut. L. Ins. Co. v. Hanford, 143 U. S. 187, 190, 12 Sup. Ct. 437, 438 (36 L. ed. 118, 120); Johns v. Wilson, 180 U. S. 440, 21 Sup. Ct. 445, 45 L. ed. 613, 617. See 27 Cyc. 1356; Iowa Loan & Trust Co. v. Schnose, 19 S. D. 248, 103 N. W. 24, 9 Ann. Cas. 255; Herd v. Tuohy, 133 Cal. 62, 65 Pac. 139; Fanning v. Murphy, 126 Wis. 545, 105 N. W. 1056, 4 L. R. A. (N. S.) 666, 110 Am. St. Rep. 946, 5 Ann. Cas. 435; Pratt v. Conway, 148 Mo. 291, 49 S. W. 1028, 71 Am. St. Rep. 602; Jones on Mortgages, § 740.

Upon being advised that the purchaser had assumed the mortgage debt, the plaintiff knew, as a matter of law, that he might maintain an

action directly against such purchaser to recover the amount of such mortgage debt. McDonald v. Finseth, 32 N. D. 400, 155 N. W. 863, L. R. A. 1916D, 149; 27 Cyc. 1349. Further, he knew that upon such transfer and assumption of the mortgage debt the relation of principal and surety would exist between the purchaser and the mortgagor, and that the lien of his mortgage and the enforcement thereof was necessary to preserve and protect the mortgagors' rights, as sureties, in such transferred property.

If it be conceded that the plaintiff was not bound to recognize this relation so as to discharge the mortgagor as to the principal debtor (Jones on Mtgs. § 741), yet, upon the record, the facts are sufficient to warrant a finding that the plaintiff, by his consent and voluntary action, did so discharge the mortgagors as principal debtors, and did recognize the relation of suretyship; that voluntarily the plaintiff agreed to not hold the mortgagors personally liable for the mortgage debt; that voluntarily he agreed to look solely to the mortgage lien for the payment of such mortgage debt; that the mortgagors, through their mother, made settlement with the purchaser through notes for such mortgage debt; that one of these notes, in fact, since has been paid; that through such voluntary agreement and consent of the plaintiff the defendant mortgagors parted with title, notes, and money. Thus might the mortgagors be lulled into a sense of security that both their rights and their obligations would be protected by the action of the plaintiff, satisfied to rely wholly upon the mortgage lien. Thus might they, with full reliance upon plaintiff's agreement, refrain from keeping guard to see that the mortgage security was enforced. Such an agreement was valid at least to the extent of recognizing the relation of the mortgagors, as sureties, upon the transfer and the assumption of the mortgage debt. First Nat. Bank v. Watkins, 154 Mass. 385, 28 N. E. 275. It recognized and gave emphasis to this secondary liability of the sureties in equity by consenting to look solely for payment to the mortgage lien. Tripp v. Vincent, 3 Barb. Ch. (N. Y.) 613.

The plaintiff contends that his consent and agreement, if so made, amounted to a renunciation of the mortgagors' personal liability upon the note, and as such it must be in writing, pursuant to § 7007, C. L. 1913; that principles of novation apply, to the transaction, and that a novation of the debt could not occur except by a contract in writing, since the note did not become due until two years after its execution. These contentions overlook the legal relations established between the parties

by their voluntary acts. Relations that were beyond the mere contract relation evidenced by the note. The resultant duties, rights, and obligations of the mortgagors, the mortgagee, and the purchaser arose by operation of law through their voluntary action. In such case, the duty of the mortgagee arises upon equitable considerations. Merriam v. Miles, 54 Neb. 566, 74 N. W. 861, 69 Am. St. Rep. 731. If the mortgagee had extended for the purchaser the time of paying the mortgage debt, or if he had released the mortgage lien knowing the relations between the parties, it is evident that it would not have required a written renunciation of defendants' liability upon the note, or that the note should have been surrendered to the defendants. Under such circumstances the mortgagee was bound to recognize the equitable rights of the mortgagors, and he could not deal with the equity of redemption prejudicial to the mortgagors' right of subrogation. Calvo v. Davies, 73 N. Y. 211, 29 Am. Rep. 130. See Union Stove & Machine Works v. Caswell, 48 Kan. 689, 29 Pac. 1072, 16 L. R. A. 85. See Iowa Loan & Trust Co. v. Schnose, 19 S. D. 248, 103 N. W. 22, 9 Ann. Cas. 259. Thus, should similar principles apply when the mortgage lien is lost, not through direct action of satisfaction or extension, but through neglect of duty. If the transaction be regarded as a novation, it is not within the statute of frauds because the duty consequent upon plaintiff's agreement is implied by law. Urquhart v. Brayton, 12 R. I. 169, 171, 20 Cyc. 282. Pursuant to these legal relations established by the parties, the plaintiff possessed a mortgage lien which was collateral security for the mortgagor's relation as sureties, so recognized by the plaintiff. It was plaintiff's duty to preserve and protect this security so that the sureties might not suffer loss. If, through his neglect, there was loss, it was proper that he be held accountable therefor to the sureties. See State Bank v. Edwards (N. D.) 177 N. W. 677; Scandinavian Amer. Bank v. Westby, 41 N. D. 276, 172 N. .W. 666. Likewise, if the facts be so found by a jury, the failure of the plaintiff to perform his duty was a legal defense to the defendants for their liability upon the note. See Hampe v. Manke, 28 S. D. 501, 134 N. W. 60; First Nat. Bank v. Watkins, 154 Mass. 385, 28 N. E. 275. The amendment offered, tendering this issue, should have been allowed when tendered. The plaintiff was entitled to know and to be fully apprized, then, that it was necessary for him to meet such issue. See Patterson v. Lynn, 27 N. D. 391, 416, 147 N. W. 256. Accordingly, it is ordered that a new trial be granted, and that all costs shall abide the event.

ROBINSON and GRACE, JJ., concur.

BIRDZELL, C. J. (concurring in part and dissenting in part).   I concur in the order of reversal and remand, and in a portion of the reasoning upon which the conclusion is based in the principal opinion.   There are two propositions, however, upon which I am not in accord with the views of the majority of the court as expressed in that opinion.   It is held that the trial court should have permitted an amendment to the answer, submitting an issue as to a conditional delivery of the note.   The first amendment offered was to the effect that it was agreed at the time of the giving of the note that the defendants were not to be held personally liable thereon, and that plaintiff would rely solely upon the real estate security referred to in said note to make payment of the indebtedness thereby represented.   The court, while denying this motion to amend in the first instance,. afterwards permitted evidence to be introduced   as though the amendment had been allowed.   Later, during the progress of the trial, the defendants' attorney sought to show that the defendants sent the note in suit to Mary A. Nelson, mother of the defendant A. J. Nelson, to be by her delivered to the plaintiff *on condition* that the plaintiff would agree to look solely to the real estate security for payment. This evidence was objected to and the objection sustained on the ground that neither the answer nor. the amendment, which the court had in effect allowed, submitted any issue as to *conditional* delivery.   Whereupon the defendants' attorney made an offer of proof to the effect that the defendants authorized Mary Nelson to deliver the note to Leach if he would agree to rely solely on the real estate security, that this condition was communciated to Leach, and he agreed thereto.

The original answer submitted as defenses a release from personal liability on the note through the sale of the equity of redemption in reliance upon a release and discharge from further liability on the note. Also that plaintiff's loss, if any, was due to his own carelessness and neglect in allowing the property to be foreclosed without making redemption.   I can see no error in the refusal of the trial court to permit   the amendments offered at the trial, in so far as there was a refusal.   In my opinion, neither of the amendments presents a defense; the first, because the evidence in support of it would contradict the terms of a written instrument.   The written promise of the defendants is a promise to pay money, and of course evidences a personal obligation to that effect.

If it can be shown that there was an oral agreement whereby they should not be held liable for the payment of money, any other purported obligation of the writing could be as effectually contradicted, and there would be nothing left of the so-called parol evidence rule, and no sanctity to the written obligation. It is difficult to conceive of evidence more strongly contradictory of the terms of a note than that presented in the instant case. The note purports to be an obligation to pay money; but the evidence offered would establish that, instead of its being such an obligation, it was nothing more than a contract to allow the payee to dispose of an equity of redemption through the foreclosure of a mortgage, It could be as readily shown that a parol agreement was made whereby stock was to be received as the equivalent of the cash. This clearly could not be shown. Perry v. Bigelow, 128 Mass. 129.

The nature of the question is not altered, in my opinion, by the statement of substantially the same defense in terms of *conditional* delivery, as was done in the second amendment offered. The *defendants* offered to show that the condition was assented to. Hence, at the time the note was in fact delivered, it was delivered to become as effective as it ever would be at any subsequent time, and it would never become effective as an obligation to pay money. Nothing could happen in the future that would enlarge or restrict its effect under the agreement sought to be shown. The agreement, being inadmissible because repugnant to the contract contained in the note, does not become any the less repugnant by being stated in terms of conditions. To illustrate: If a contemporaneous agreement between A. and B. that a certain note delivered by A. to B. might be discharged by the delivery of a cow cannot be shown because repugnant to the note, neither could it be shown that, at the time the note was delivered, A. stated that he would not deliver it unless B. would agree to accept a cow in lieu of the money. The note being in fact delivered, the agreement in the second instance is just as repugnant to the note as in the first. The essence of the whole matter is that the so-called parol evidence rule is supposed to prevent encroachment upon the definite terms of written agreements by showing that wholly different terms were in fact agreed upon. It seems to me to be clear that the trial court did not err in denying the amendments.

There is another holding in the principal opinion with which I am not in accord. It is said that it was the plaintiff's duty to preserve and protect the security so that the sureties might not suffer loss, and that if through his neglect there was loss, the plaintiff might be held ac-

countable therefor. While I recognize the soundness of this principle, it seems to me that, in view of the facts in this case, there is danger of it being misapplied. It must be conceded under the facts here that the only neglect or failure to preserve or protect the security was that found by the jury in the special verdict, and consisted in the failure of the plaintiff to redeem from the foreclosure of the first mortgage. I am of the opinion that where a creditor holds a second mortgage as security for an obligation for which sureties are also liable to him, he would not, under ordinary circumstances, lose his rights against the sureties by failing to redeem from a first mortgage foreclosure. In other words, a creditor is not bound to advance his own funds to redeem from a first mortgage foreclosure sale in order to protect his second mortgage at the peril of losing rights against sureties who are also liable to him on the obligation secured by the second mortgage.

I am of the opinion, however, that the note in suit was legally discharged as the personal obligation of the makers if, at the time the property was sold, it was agreed between the parties that the payee would look to the property alone, and this was followed by a settlement on the basis of such contract. Under facts somewhat similar to those in the instant case, the Supreme Court of Massachusetts said (First National Bank v. Watkins, 154 Mass. 385—387, 28 N. E. 275, 276:

"An agreement to 'look to the mortgaged property alone for the payment of the note' would be, in effect, an agreement to discharge the defendant from all liability upon it, which if made upon a valuable consideration, would be a good defense to a suit for payment of it; although a new and independent contract, it would be unreasonable to permit a plaintiff who has made such an agreement to collect his note of the maker, and to compel the maker to seek his remedy by a suit to recover back from the payee as damages the sum which was paid. * * *

"If there was an agreement purporting to be made in reference to the defendant's sale of the equity of redemption in the mortgaged property in the form of an offer that the defendant might, if he chose, refrain from paying the note, and from taking measures to secure payment of it out of the proceeds of the mortgaged property, and that the plaintiff would look to the property alone for the payment of it, and the defendant, relying upon the offer, did refrain from making any effort to have the property applied to the payment of the note when it became due, and thereby suffered detriment, there would be a sufficient consideration for the agreement."

This reasoning, in my opinion, is applicable under the facts in the instant case.

I agree that § 7007, C. L. 1913 (§ 122, Negotiable Instruments Law), requiring renunciation to be in writing, does not apply. In my opinion, however, § 7004 (§ 119, Negotiable Instruments Law), which provides that a negotiable instrument may be discharged "by any other act which will discharge a simple contract for the payment of money" does apply.

CHRISTIANSON, J., concurs.