[File No. 6880.]

## HANS HANSON, Respondent, v. RAY COOL, Appellant.

(293 N. W. 884.)

Opinion filed September 17, 1940.

*Asmundur Benson,* for appellant.

*E. R. Sinkler* and *G. O. Brekke,* for respondent.

MORRIS, J. This is an appeal by the defendant from a judgment of the district court of Bottineau county cancelling a quit-claim deed executed by the plaintiff and conveying to the defendant two eighty-acre tracts of land in Bottineau county. The judgment also directed the payment to the defendant of $639.03 representing the consideration paid for the deed and taxes paid by the defendant subsequent to its execution. The case is here for trial de novo.

The plaintiff is a nonresident of the state. At the time of the commencement of the action he did not furnish security for costs as required by chapter 199, N. D. Session Laws 1937, which amends § 7812, N. D. Compiled Laws 1913. The defendant attached to and served upon the plaintiff with his answer a motion to dismiss the action upon the ground that the plaintiff had failed to furnish security for costs. Thereafter the plaintiff secured the indorsement on the summons of a resident of the county as security. When the case was called for trial the defendant renewed his motion for dismissal. The court then called attention to the fact that § 7814, Compiled Laws 1913 had not been amended and stated that he would give the plaintiff an opportunity to furnish satisfactory surety. This was done by permitting the plaintiff to deposit, with the approval of the clerk of court, $25 as surety in addition to indorsement of the summons. The court then said: "What about this motion for dismissal? Any motion going to be made?" to which defendant's attorney replied, "I think not." The defendant now argues that the failure to furnish costs as prescribed by chapter 199, N. D. Session Laws 1937, entitled him to a dismissal of the action.

The trial court correctly pointed out that § 7814, N. D. Compiled Laws 1913 has not been amended. Under that section this court has held that when a motion is made to dismiss an action for failure on the part of a nonresident to give surety for costs, the trial court may give the plaintiff an opportunity to procure the requisite surety. Bergh v. John Wyman Farm Land & Loan Co. 30 N. D. 158, 152 N. W. 281; Quinn Wire & Iron Works v. Boyd, 52 N. D. 273, 202 N. W. 852. Chapter 199, N. D. Session Laws 1937, does not alter the rule announced in those cases.

The record discloses that the plaintiff filed on the land as a homestead in 1899. In 1906 after receiving title from the government, Hanson moved to Canada where he has since resided. He is a single man about seventy years of age and is engaged in farming. The defendant is also a farmer. His farm adjoins the land in question. Shortly after moving to Canada the plaintiff appointed one Malcolm McKechnie to look after the farm as plaintiff's agent. Hanson testifies that McKechnie has been looking after the farm for over fifteen years

and that he is satisfied with his agent's work. From McKechnie's testimony it appears that he rented the land from the plaintiff and paid him a rental of $200 a year from 1927 to 1931. In the spring of 1932 McKechnie wrote to the plaintiff to the effect that he could not pay the $200 a year but would continue to look after the land. Hanson did not reply. McKechnie continued to look after the land from that time down to the present, although he received no word from Hanson and made no remittance to him. Most of this time the land was rented to tenants. McKechnie received the landlord's share of various governmental agricultural gratuities and also the landlord's share of the crops when there was any crop. No taxes were paid for the years 1932–1936 inclusive. These taxes were bid in by the county on tax sale. In 1938 the defendant bought these delinquent taxes from the county and shortly thereafter made application for tax deed. The county auditor issued a notice of expiration of redemption notifying Hanson that the period of redemption would expire March 14, 1939. The defendant knew that Hanson had been so notified. McKechnie had in his possession money belonging to Hanson being the proceeds of the farm. On March 9 McKechnie redeemed from the tax certificates held by the defendant and paid into the county treasury the sum of $417.44 being the entire amount required to redeem. He did not advise Hanson of the redemption. The county treasurer, who was deputy treasurer at the time of the redemption, testified that a notice to the effect that redemption had been made was mailed to the defendant on March 9 or 10. The defendant testified that he never received the notice and did not learn of the redemption until after his return from Canada.

On March 13 the defendant left for Canada and arrived at Hanson's place at about 5 o'clock on March 14. He had with him a blank quit-claim deed. He stayed all night with Hanson and the following day Hanson deeded the farm to the defendant and received $500 therefor. It is clear that at the time of the transaction Hanson knew nothing of the redemption.

The testimony of Hanson and Cool present different versions as to what was said in the course of the negotiations. According to Cool he asked Hanson if he wanted to sell his land down in Dakota and Hanson said that he did. The court inquired of Cool at some length re-

garding the taxes. Cool testified: "All I had with him was that I made him an offer of five hundred dollars for a quit-claim deed and he said he didn't know what taxes there was. He said I'd have to pay that." Cool also testified in reply to questions by the court that he knew that he held tax certificates for over $400 and that he did not know anything had been paid in by McKechnie to redeem them. He said nothing to Hanson about the outstanding tax certificates.

According to Hanson, Cool came to his place on the evening of March 13 and first inquired about the purchase of cattle. Then he asked Hanson if he was short of money and Hanson replied in the negative. Cool then asked if Hanson wanted to sell the farm. Hanson replied that he had not thought about it. Cool then brought up the subject of Mr. McKechnie and criticized the way he had been handling Hanson's farm. Cool then offered Hanson $500 and Hanson said he would give him his answer the next morning. Cool told Hanson that McKechnie was trying to get the land and that he was going to get it for the taxes. The next morning Hanson said to Cool, "I will let you have that farm under the conditions that you pay me that amount of money and the taxes," to which Cool agreed. Hanson further testified, "He told me he wanted a quit-claim deed on that farm so he could get to Bottineau and record that land . . . so McKechnie shouldn't get ahead of him." Hanson further testified that he believed what Mr. Cool said about McKechnie getting the farm. On the morning of the 15th, Cool and Hanson went to a near-by town and had an attorney fill out the quit-claim deed that Cool had brought with him. It was then executed by Hanson and delivered to Cool who returned home.

The original complaint sought cancelation of the quitclaim deed on the ground that it was procured by false and fraudulent representations made by the defendant and relied upon by the plaintiff. After the parties rested the court said, "There may be some matter of pleading when we get done that would have to be checked up and possibly some amendments to conform to the facts developed on the trial and if so I will permit any amendments to conform to the proofs on either side." Neither side objected. The court also commented at length on the evidence but did not make a final decision and expressed the hope that the parties would get together and make a settlement between

themselves. In the course of his comment the court said, "Certainly Hanson executed and delivered the quit-claim deed in question in mistake of fact. He didn't know the true situation at the time he did it. His mind didn't act freely because he was acting under a wrong impression as to what the real facts were." Later, but before the court made its findings and decision, the plaintiff filed an amended complaint in which he pleaded two causes of action. The first was substantially the same as the original complaint. In the second cause of action the plaintiff sets out that he executed the quit-claim deed in ignorance of the fact that McKechnie had redeemed the taxes and that he had the erroneous and mistaken idea that these taxes had not been paid, but had he known the true facts he would not have executed the deed for a consideration of $500, because the market value of the land was at least $2,500. He further alleges that if the defendant did not know that the taxes had been redeemed the parties labored under a mutual mistake and that the deed was executed under the express agreement that the defendant was to take care of all taxes. The plaintiff offers to pay into the court the consideration that he received from the deed and any taxes the defendant may have paid after he received the deed.

The defendant specifies as error the allowance of the amendment to the complaint and the filing of the amended complaint. It is proper that we consider this point of procedure before passing upon the merits. The trial court states in the findings of fact, "that the court, after all of the evidence was in, authorized that the pleadings be amended to comply with the evidence introduced at the trial of the above entitled action."

The defendant argues that the action was changed by the amendment after the case had been tried from an action for fraud to one based upon mistake or mutual mistake, and that it is error to permit such an amendment.

Section 7482, N. D. Compiled Laws 1913, provides for the amendment of pleadings as follows: "Before or after judgment in furtherance of justice and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party; or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material

to the case; or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." Under this section the rule with reference to the amendment of pleadings has been established as one of liberality to the end that justice be promoted. In Fuller v. Fried, 57 N. D. 824, 224 N. W. 668, it is said, "In this state the courts are vested with wide discretionary power in the matter of granting amendments to pleadings in furtherance of justice. The proposed amendment will not change the cause of action. Born v. Castle, 22 Cal. App. 282, 134 P. 347. But even though the amendment resulted in a change of the cause of action in a technical sense, this would constitute no valid objection provided the amendment was one which the party otherwise should be permitted to make in the furtherance of justice." See also Johnson Constr. Co. v. Austin, 55 N. D. 905, 215 N. W. 484; Leach v. Nelson, 48 N. D. 1046, 189 N. W. 251; Patterson Land Co. v. Lynn, 44 N. D. 251, 175 N. W. 211; Kerr v. Grand Forks, 15 N. D. 294, 107 N. W. 197; Rae v. Chicago, M. & St. P. R. Co. 14 N. D. 507, 105 N. W. 721.

Bancroft, Code Pleading Practice and Remedies, Ten Year Supplement, § 544, says, "The general rule is that when the evidence shows that one of the parties to the action is entitled to relief except for a defect in the pleadings, an amendment may be allowed in order to make the pleadings conform to the facts proved. Such amendments are in the discretion of the trial court, and are liberally allowed, even in jury cases. Great latitude is accorded the trial court in the matter, and its action either by way of allowing or rejecting such amendments will not be disturbed in the absence of clear abuse of discretion, resulting in prejudice to the adverse party."

This is an action for the cancelation of a deed. The amendment does not change the basic cause of action. The most important testimony deals with what was said and done as between the plaintiff and defendant at the time of the execution of the instrument. Facts were disclosed which the trial court felt established that the deed was executed and delivered under such a mistake of fact as would entitle the grantor to a cancelation thereof. The amendment conformed the pleadings to the evidence. In our opinion the trial court did not abuse the discretion vested in him when he permitted the amendment in the furtherance of justice.

Through the haze of conflicting testimony, these highlights of fact are discernible. Cool purchased the delinquent taxes against Hanson's land and applied for tax deed. The period of redemption would expire March 14. McKechnie redeemed the land for Hanson with Hanson's money on March 9. On March 13 Cool left for Canada and arrived at Hanson's home on the following evening and offered Hanson $500 for a quit-claim deed, which Hanson accepted. Hanson did not know that the redemption had been made. Cool had not received the county treasurer's notice that redemption had been made. It would be uncharitable to assume that he knew that the redemption money was waiting for him in the office of the county treasurer and that he concealed that fact from Hanson when he offered to buy the land. We therefore assume that both Hanson and Cool were ignorant of the redemption and that both mistakenly assumed that Cool would be required to pay all of the taxes that had accumulated against the land which included those that Cool had bought from the county. The deal, therefore, was negotiated under a mutual mistake of fact. That fact was material to the transaction to the substantial extent of $417.44.

The mistake, however, goes farther than a mere matter of consideration. Hanson thought that he was about to lose title to the land and was unable to redeem, when in fact redemption had been made and the land was not about to be lost.

McKechnie showed great interest and activity in this case. The defendant asserts that he and not Hanson is the real party in interest in the litigation. The record does not bear out this contention. Hanson appears to have been the owner of the land and the evidence is conclusive that McKechnie kept the proceeds from the farm for a period of years, and it was from these proceeds that the tax redemption was made. Cool took his deed from Hanson. The evidence discloses no change in the status of either the land or the parties since the deed was given. The defendant is in a poor position to assert that his grantor is not the real party in interest in an action to set aside the deed.

There is considerable conflict in the testimony as to value. The trial court found the value of the land to be $2,500. Our review of the record on this point leads us to the conclusion that the trial court's

finding as to value is correct. "Cancelation is appropriate when there is an apparently valid written agreement or transaction embodied in writing, while in fact, by reason of a mistake of both or one of the parties, either no agreement at all has been made, since the minds of both parties have failed to meet upon the same matters, or else the agreement or transaction is different, with respect to its subject-matter or terms, from that which was intended." Pomeroy, Equity Jurisprudence, 4th ed. § 870.

"The general rule is, that an act done or contract made under a mistake or ignorance of a material fact is voidable and relievable in equity." Story, Equity Jurisprudence, 14th ed. § 209. The principle of cancelation because of a mutual mistake may be applied by courts of equity to deeds as well as to other instruments. Chicago, St. P. M. & O. R. Co. v. Washburn Land Co. 165 Wis. 125, 161 N. W. 358; 16 Am. Jur. 463, Deeds, § 43.

The mistake in this case is a material one. Hanson does not appear to have been at fault. To permit the defendant to keep both the land and the tax redemption money would be unconscionable when we consider the circumstances under which the mistake was made. He received more than he bargained for when he got both the quit-claim deed to the land and the redemption money for his tax certificates. The defendant is not prejudiced by the judgment. It places him in statu quo. The cancelation of the deed returns to Hanson the property and nothing more. He is required to pay to the defendant the consideration he received and the amount of the taxes which were paid subsequent to the execution of the deed. Thus both parties revert to the status from which they started. This is an equitable result. Judgment is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BURR, and BURKE, JJ., concur.