[File No. 6690.]

TRUMAN HART, Respondent, v. CHARLES RIGLER, a Sole Trader Doing Business as the Bismarck Hide & Fur Company, Mernie Braget, Ed Pepple and Bill Herman, Defendants,

and

CHARLES RIGLER, Appellant.

(295 N. W. 308.)

Opinion filed December 14, 1940.

*F. E. McCurdy,* for appellant.

*Aloys Wartner, Jr.,* and *Aloys Wartner, Sr.,* for respondent.

BURR, J. Plaintiff commenced an action in conversion against the Bismarck Hide & Fur Company, Mernie Braget, Ed Pepple, and Bill Herman, and in the complaint alleged that the Bismarck Hide & Fur Company was a corporation; that plaintiff, on September 6, 1937, "was the owner of one 45 Horse Power Advance-Rumley Steam Engine and one 25 Horse Power Case Steam Engine;" that the defendants converted this property to their own use; that the property was worth $290; that demand was made upon the defendants for the return of the property, and the demand refused.

The defendant Ed Pepple was represented by Mr. W. E. Matthaei; and the other defendants by Mr. F. E. McCurdy of Bismarck. The defendants answered separately. We need not concern ourselves with the status of Mernie Braget, Ed Pepple, or Bill Herman, as no judgment was rendered against them, and none of them is concerned in this appeal.

The defendant Bismarck Hide & Fur Company answered, alleging the "Bismarck Hide & Fur Company is a trade name under which Charles Rigler conducts an individual business and is not a corporation;" and denied every other allegation in the complaint, specifically denying "that he ever had the personal property described in the complaint in his possession or under his control." Thus by its answer, it denied: Ownership of the property in the plaintiff, that it ever converted the property to its own use, and the value as alleged in the complaint.

The case came on for trial on July 19, 1939. Plaintiff moved the court for leave to amend the title of the complaint so as to show that the defendant was "Charles Rigler, a sole trader, doing business under the name of the Bismarck Hide and Fur Company," which motion was resisted on the ground that Rigler had never been served with any summons and complaint, the return of the sheriff showing that service had been made upon a daughter of Rigler at Rigler's place of business. The court granted the motion, testimony was introduced, and the case submitted to a jury, who found for the plaintiff and against the defendant Rigler in the sum of $200.

Defendant Rigler was not present at the trial. His counsel, F. E. McCurdy, appeared for two of the other defendants and cross-examined witnesses. However, at the close of the entire case, counsel for defendant Rigler made a motion to dismiss this action against the Bismarck Hide & Fur Company on the various grounds specified in his objection to the amendment of the complaint, and specifically on the ground, not only that the court had no jurisdiction of Rigler or the subject matter as against him, but also that there was no proof that the two engines involved in this lawsuit "ever came near the hands of the Bismarck Hide & Fur Company." The court overruled the motion, and the case was submitted to the jury.

After the verdict was rendered, defendant Rigler moved for judgment notwithstanding the verdict, or for a new trial on various grounds, which included "Error in law occurring at the trial, and excepted to;" and insufficiency of the evidence to justify the verdict and that the verdict is against the law. The specifications of error were amplified to include alleged error in permitting the amendment; that there was no proof of any demand; there was no proof that Rigler ever received the property; and that by its verdict, the jury found there was no conversion by Pepple, and, therefore, there could have been none by Herman, Braget and Rigler.

The trial court denied the motion, judgment was entered, and defendant Rigler appeals from the judgment entered in this case and from the order denying the motion for judgment notwithstanding the verdict or for a new trial.

The defendant Bismarck Hide & Fur Company made a general appearance when it filed its answer, and thus conferred jurisdiction of the court over itself, which jurisdiction was complete from the date of the appearance. See Simensen v. Simensen, 13 N. D. 305, 100 N. W. 708; McLean v. McLean, 69 N. D. 665, 290 N. W. 913.

The trial court committed no error in permitting an amendment of the complaint to show that the true name of the defendant was Charles Rigler. Under the provisions of § 7482 of the N. D. Compiled Laws 1913, "The court may, before or after judgment in furtherance of justice and on such terms as may be proper, amend any pleading, process or proceeding . . . by correcting a mistake in the name of a party."

This section gives to the trial court "wide discretionary power in the matter of granting amendments to pleadings in furtherance of justice." Fuller v. Fried, 57 N. D. 824, 838, 224 N. W. 668, 674; Hanson v. Cool, ante, 302, 293 N. W. 884. Certainly there was no abuse of discretion in this matter. The answer of the defendant set forth that the real name of the defendant was Charles Rigler, and that the term, Bismarck Hide & Fur Company, was merely the trade name under which he operated. This was months before the trial. He was not misled or injured.

In his memorandum opinion denying the motion for judgment notwithstanding the verdict or for a new trial, the court confines his decision to two questions—his action in granting the motion to amend the pleadings, and the proof with reference to conversion.

It is true the defendant, in making his motion for a new trial, could have been more specific in pointing out wherein the evidence was insufficient to sustain the verdict; nevertheless, there is nothing in the record to show that such indefiniteness was urged in the lower court on the hearing of the motion for a new trial; and it is clear from the memorandum opinion, in its exhaustive survey of the evidence, the court considered the evidence, and passed upon its sufficiency. Accordingly, the same review of the evidence is before us here. See Clausen v. Miller, 63 N. D. 778, 249 N. W. 791.

Clearly, the court's order denying this motion is based solely on these propositions, as the court stated, after discussing the proof presented to show conversion on the part of the defendant, "For that reason the motion for judgment notwithstanding the verdict or for a new trial will be denied." Thus the merits of this appeal center around the proof showing that the property came into the hands of the defendant Rigler and that he converted the property.

We need not concern ourselves with the fact that the jury failed to render a verdict for or against the defendants other than Rigler. Although the case as submitted required a verdict as to such defendants, this portion was ignored. However, so far as Rigler is concerned, it is immaterial, for if he got the property, he got it through these other defendants.

The core of the dispute between plaintiff and the defendant Rigler is this: The defendant denies that he ever converted the property,

had possession thereof, or ever had it under his control. Upon this question, the burden of proof to show conversion by Rigler is upon the plaintiff, and he must show this by the preponderance of the evidence.

In 1926 Fred Pepple left three obsolete steam threshing engines on the farm of his brother Ed, one of the defendants, with instructions to sell them and get them off the place. One of these engines was sold and is not involved in this controversy. In 1936 Fred Pepple sold the two engines in controversy to the plaintiff. Plaintiff left the engines just where they were; but Ed Pepple knew the engines had been sold to the plaintiff. Despite this, Ed Pepple sold the engines to Herman in September, 1937, and almost immediately thereafter, Herman sold them to Braget. Braget took possession of the engines, had Ed Pepple take them to Manfred, had them cut up, and loaded the junk, or most of it, into a car. While they were being cut up and loaded, plaintiff appeared and claimed the engines as his own.

In his complaint, the plaintiff alleges that he made demand upon the Bismarck Hide & Fur Company for the return of this property, but there is no proof whatever that any such demand was ever made. There is proof he demanded $290 as the value.

In the trial of the case, although Braget and Herman had answered and their counsel cross-examined witnesses on their behalf, neither of them testified.

The only testimony there is which in any way tends to connect the defendant Rigler with the transaction is, first, the testimony of Ed Pepple, who stated that when Braget hired him to haul the engines to Manfred, he told Pepple they were "for the Bismarck Hide & Fur Company." Just what Braget meant by this is not shown. There was nothing to show that he represented the Hide & Fur Company, was its agent, was in any way connected with the defendant, or that the defendant ever heard or ever knew of this statement. It was not the testimony of Braget; it was the testimony of Pepple as to what a third person said. It was pure hearsay as far as the defendant was concerned, and there was nothing in this statement to indicate what Braget had in mind. It might easily be considered as prospective in character and be interpreted to mean that Braget intended to sell this to the defendant in the future. The testimony shows that Braget

lived at Manfred, was an elevator agent there, and, as a side issue, dealt in old iron, buying it wherever he could secure it.

Another point in the testimony and relied upon by the plaintiff to show conversion by the defendant, is that when plaintiff talked with Braget, as the latter was cutting up and loading the engines, Braget told him he was shipping the junk to the "Bismarck Hide & Fur Company in Bismarck." Again this was pure hearsay and might readily be interpreted as meaning he was intending to sell the iron to the company. It is not the testimony of Braget; it is the testimony of Hart as to what Braget said; and again there is nothing to show that Braget was at that time an agent for Rigler, or that Rigler knew anything about the deal. There is no testimony showing that Rigler ever talked with Braget, ever hired Braget, ever dealt with Braget, ever knew Braget. Braget did not testify.

With reference to the hearsay testimony introduced, and upon which the plaintiff relies, no objection was made to the hearsay character of the statement made by Ed Pepple to the effect that Braget said the engines "were for the Bismarck Hide & Fur Company," but this was after the court had ruled that because Braget was also a party to the action, he would permit hearsay testimony. Prior to this testimony given by Pepple, the plaintiff was being interrogated as to what Braget said; and on being asked what Braget said to whom he was shipping the engines, Mr. McCurdy interposed the objection that "agency cannot be proven by declarations of the agent, there must be some foundation, some previous evidence as foundation for that." At that time the court said: "He is himself a defendant here"—meaning Braget was a defendant—but it was not Braget who was testifying. Mr. McCurdy continued his objection, saying: "That doesn't make any difference, he is trying to bring somebody else in as an agent," and the court overruled. He was then allowed to say it was the Bismarck Hide & Fur Company for whom he was geting this material. Immediately Mr. McCurdy moved "to strike that out on the ground the Bismarck Hide & Fur Company—none of their representatives were there, have not been sued, are not parties to these proceedings. An attempt to prove agency by the uncorroborated testimony of one who —" and here he was interrupted by the court, who said: "Is this the only proof?", to which the counsel for plaintiff said he would tie it up,

and the court said: "This alone wouldn't be sufficient." Mr. Mc-Curdy continued his protest, saying, when plaintiff's counsel said "We expect to prove this property was actually shipped from the town of Manfred, North Dakota, to the Bismarck Hide & Fur Company." "That itself would not be sufficient to prove any agency." The court overruled Mr. McCurdy's objection.

It is true that thereafter Mr. Pepple testified without the objection that it was hearsay, but counsel for the defendant Rigler knew what the action of the court was. The objections were not again interposed; but as the case for the plaintiff to show conversion by the defendant rests almost entirely upon hearsay testimony as to what Braget said and did, it becomes important to notice the objections that were interposed.

As the case was tried in Fessenden, some six or eight miles from Manfred, there is nothing to show plaintiff could not have secured Braget as a witness. If Braget was in fact an agent for Rigler, or sold this iron to Rigler at any time, there is nothing in the record to indicate this fact could not have been proven easily, and the burden of proof was upon the plaintiff.

In addition, the testimony shows the property was not shipped to Bismarck. It was shipped to Duluth, if shipped anywhere from Manfred.

The third point relied upon by the plaintiff to show the connection of Rigler is the testimony of the station agent at Manfred. This agent testified that a waybill was made out, and Braget signed the same as shipper as follows: "Bismarck Hide & Fur Company, by Mernie Braget."

It is clear from the record that when the agent was testifying as to the shipper of the iron, he was depending entirely upon what appeared on the waybill. He did not claim to have any independent knowledge of the fact. His testimony was merely a repetition of what the waybill showed.

Whatever testimony there is with reference to the character of the Bismarck Hide & Fur Company is found in Rigler's own answer, which, of course, is binding upon him. Therein he shows that this term is merely a trade name under which he operates. Therefore, the Hide & Fur Company is not a corporation of which Braget would

be a member or an officer. There is no proof that Braget was authorized by Rigler to ship out this junk in his name.

There is a duplicate copy of this waybill in evidence, which showed that the iron was billed to Duluth, and the testimony shows that it did leave Manfred. There is no proof that it ever reached Duluth; that it ever came into the hands of Rigler or any of his agents in Duluth; that Rigler ever knew this waybill was made out and the goods shipped to the Bismarck Hide & Fur Company. It is suggested that one may take into consideration the usual customs in business that when the iron left Manfred on a car and was presumably shipped to Duluth, it therefore reached Duluth; but even if it did reach Duluth, there is nothing to show that Rigler ever knew it, or ever got it, and he specifically denies in his answer that he ever got the scrap iron.

There is no tangible evidence whatever showing that Rigler had dominion of any nature whatsoever over this property. What became of it we do not know. There is no claim that any copy of the waybill was ever delivered to Rigler; nor any suggestion made that it was possible for him to get possession of the property in Duluth, if he wanted to do so, having no copy of the waybill or any other evidence showing him to be entitled to it.

It was not incumbent upon the defendant to prove he never got the property, at least until the plaintiff had made a prima-facie case tracing property into his hands.

The plaintiff was interrogated as to a "Purchase Contract," which he claimed to have had with Rigler wherein the Hide & Fur Company agreed to buy from him, and he agreed to sell to them, a carload of "Honest Country Mixed and Skinned Scrap Iron" at Fessenden. This contract is dated September 6, 1937. Apparently this was used for the purpose of refreshing plaintiff's memory as to the value of old iron, or as proof of such value. It is in the record. It is not signed by Rigler, but it is on a printed form which would indicate it was printed for the Bismarck Hide & Fur Company.

But plaintiff does not claim that he bought the engines from Pepple for the purpose of selling them to Rigler. He bought these engines in 1936, this contract is dated September 6, 1937, and the bill of lading is dated September 28, 1937, but there is no intimation that the prop-

erty involved herein was included in the scrap iron which Hart was to sell to Rigler as described in the contract.

This is not a case where the verdict of the jury is controlling on the theory that the jury is the judge of the evidence, and that where there is conflicting testimony, the verdict is decisive. There is no testimony showing Rigler had any knowledge whatever of any of these transactions.

Though the granting or refusing a new trial on the ground of the insufficiency of the evidence is largely within the discretion of the trial court, yet such discretion is a legal discretion. Donahue v. Boynton, 62 N. D. 182, 242 N. W. 530. "This discretion, however, is neither capricious, arbitrary, nor unrestricted." Martin v. Parkins, 55 N. D. 339, 347, 213 N. W. 574, 576 (quoting from Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249, 91 N. W. 63). Thus, while the matter rests largely in the discretion of the trial court, "This does not mean that such discretion will never be reviewed." Johnson v. Patterson, 67 N. D. 132, 137, 270 N. W. 97, 99. See also Olson v. Riddle, 22 N. D. 144, 132 N. W. 655, wherein we say: "Although trial courts are vested with a large discretion in granting or refusing new trials, such discretion is a legal discretion, and appellate courts will not hesitate to interfere for the protection of litigants in a clear case of abuse of such discretion."

So far as the record is concerned, the plaintiff failed to make out a case against Rigler; and, therefore, strictly speaking, it may be as defendant claims, he was entitled to judgment to that effect. But even if the state of the testimony is such that the defendant was entitled to a dismissal or a directed verdict—a matter which we do not pass upon—nevertheless, we do not, under the situation in this case, order judgment of dismissal for the defendant, as it is reasonable to believe the defects may be supplied. We believe justice is better secured by merely ordering a new trial. This is the procedure followed in Bakke v. Nelson, 68 N. D. 66, 276 N. W. 914, based upon citations set forth therein.

There is nothing to indicate that the plaintiff cannot supply the defect through the testimony of Braget or from some other source; and, therefore, under the rule set forth, while the judgment must be re-

versed, we do not order judgment notwithstanding the verdict, but remand the case for a new trial.

NUESSLE, Ch. J., and MORRIS, BURKE, and CHRISTIANSON, JJ., concur.